IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

NATIONAL WILDLIFE REFUGE ASSOCIATION,
DRIFTLESS AREA LAND CONSERVANCY, and
WISCONSIN WILDLIFE FEDERATION,

                Plaintiffs,                                    ORDER

   v.

                                                      24-cv-139-wmc

RURAL UTITLITIES SERVICE; ANDY BERKE,
Administrator, Rural Utilities Service; UNITED STATES
FISH AND WILDLIFE SERVICE; WILL MEEKS,
Midwest Regional Director, and SABRINA CHANDLER,
Manager, Upper Mississippi River National Wildlife and Fish Refuge,
UNITED STATES ARMY CORPS OF ENGINEERS,
LIEUTENANT GENERAL SCOTT A. SPELLMON, Chief of
Engineers and Commanding General, U.S. Army Corps of
Engineers, COLONEL JESSE T. CURRY, Commander
And District Engineer, Rock Island District, U.S. Army Corps of
Engineers, and COLONEL ERIC SWENSON, Commander and
District Engineer, St. Paul District, U.S. Army Corps of Engineers,

                Federal Defendants,

                and

DAIRYLAND POWER COOPERATIVE, and
ITC MIDWEST LLC,

                Intervenor-Defendants.

---

      A preliminary injunction hearing was held on Friday, March 22, 2024, in the above-captioned matter. Plaintiffs, comprised of various national and state recognized environmental groups, appeared by attorneys Howard Learner, Daniel Abrams, Scott Strand, and Maria Dambruinas. The so-called "federal defendants" appeared by Reade Wilson and Kimberly Cullen. Finally, the intervenor-defendants, Dairyland Power Cooperative and ITC Midwest, LLC, appeared by Stacey Bosshardt and Thomas Jensen.

      Although recently filed, this lawsuit has a lengthy history as recounted in *National*

*Wildlife Refuge Ass'n v. Rural Util. Serv,.* 580 F. Supp. 3d 588 (W.D. Wis. 2022).  In that decision, this court held on the merits that federal defendants had failed "to meet the legal requirements for an Environmental Impact Statement, Compatibility Determination, and Land Transfer."  *Id*. at 593.  On appeal, however, the Seventh Circuit held that the revocation of defendant United States Fish and Wildlife Services' initial compatibility determination under the Refuge Act, 16 U.S.C. § 668dd(d)(1)(A), prevented this court from reaching the merits, resulting in a remand order to vacate the final judgment and dismiss the case.  *Driftless Area Land Conservancy v. Rural Utilities Serv.*, 74 F.4th 489, 496 (7th Cir. 2023).

No one believed that would be the end of the parties' dispute, including the Seventh Circuit.  Rather, that court explained any merits review must await a new, proposed federal action.  Although unknown to either court at the time of their respective ruling, those actions were already underway as U.S. Fish and Wildlife Service and one of the intervenor-defendants, Dairyland Power, had already entered into a non-binding understanding for a land exchange/purchase in a private writing dated October 29, 2021, which detailed the basic terms for the exchange of 19.84 acres of land located within the Refuge (the "Exchange Property") for 35.69 acres of land held by ITC and Dairyland (the "Wagner Property").  (Dkt. #1-36.)

Although the basic terms remained the same throughout, the details of that transaction were then apparently hammered out by the federal defendants and intervenors for the next two years without any public input until the issuance of an over 100 page, draft "Supplemental Environmental Assessment" in September 2023, which quickly became the final SEA after a truncated, 14-day public review and comment period.  (Dkt.

2

#1-21.)  Although plaintiffs were able to meet the small window for comments, the federal agencies went dark again until last month when the federal defendants issued the following documents:

- Agreement for the Exchange of Lands (dkt. #1-18).

- Finding of No Significant Impact on Cardinal-Hickory Creek 345-kV Transmission Line Project Proposal for Route Modification B-IA3 and Land Exchange (dkt. #1-17).

- Land Exchange Net Benefit Analysis (dkt. #1-19).

Unsurprisingly, this prompted plaintiffs to again seek preliminary injunctive relief given that the intervening defendants were planning to proceed with immediate construction of the new transmission lines once the land exchange took effect, which meant as soon as the day after the preliminary injunction hearing, March 22nd, but for this court's temporary restraint of the land exchange.

There are a number of problems with the intervening defendants being allowed to proceed.  Most fundamentally, federal defendants and intervening defendants have orchestrated the events here to preclude judicial review of the final determination until after substantial damage has already been done to what until now was the Refuge. Whatever the merits of plaintiffs' challenge to the federal defendants' decision to proceed with the land exchange under the relevant statutes, *some* meaningful review by this court is necessary to determine "whether that decision is supported by substantial evidence." *Driftless*, 74 F.4th at 494 (citing 5 U.S.C. § 706(2)(F)).  Yet the court does not even have the relevant administrative record prepared to review.

3

In addition, although federal defendants and intervening defendants apparently take the position that no environmental assessment is even necessary for this specific land exchange, one so-called supplemental EIS upon which both defendants Fish and Wildlife Service and Rural Utilities Service purport to have relied, in turn relies substantially on an underlying environmental impact statement that this court already found deficient. As was discussed at last Friday's hearing, the Seventh Circuit's opinion vacating that ruling also suggests that perhaps a lower standard should be applied in determining the "suitability" of a land exchange under the National Wildlife Refuge System Improvement Act of 1997, as opposed to the "compatibility" of a designated use. *Driftless*, 74 F.4th at 494-95. Whatever the standard, however, plaintiffs at least have a right to challenge the proposed land exchange in court before the metes and bounds of the Refuge are forever altered and the foundation for a 195-foot powerline tower is planted in the middle of the Mississippi River bottom.

For the reasons stated above and during Friday's hearing, therefore, the court will continue to enjoin the land transfer at least until production and review of the relevant administrative record underlying the federal defendants' February 2024 Net Benefits Analysis and FONSI. The court also established the following briefing schedule as to any continuation of plaintiff's motion for preliminary injunction:

(1) the parties will have 30 days from receipt of the administrative record to file briefs addressing whether that record is sufficient to support the federal defendants' Net Benefits Analysis and FONSI; and

(2) additional briefing as to whether a notice and opportunity to comment period was required following release of the actual February 2024 Net Benefits Analysis,

4

FONSI, or the final, actual Agreement for Exchange of Land, as well as the underlying administrative record, will proceed as follows:

    (a) plaintiffs may have until April 8, 2024, to file a supplemental brief, and

    (b) intervening defendants have until April 18, 2024, to respond.

Entered this 25th day of March, 2024.

                              BY THE COURT:

                              /s/

                              _____
                              WILLIAM M. CONLEY
                              District Judge